COLEMAN, Judge, with whom BRAY and LEMONS, JJ.,
join, dissenting.
Code § 65.2-603, which requires an employer to provide necessary medical attention to an employee injured in an industrial accident, also provides that when the employee unjustifiably refuses to accept such medical services the employee shall be barred “from further compensation until such refusal ceases and no compensation shall at any time be paid for the period of suspension.” Code § 65.2-603(B). The medical attention that is necessary to restore an employee’s good health is part of the compensation to which an injured employee is entitled but it also serves the desirable purpose for both the employee and employer of enabling the employee *40 to return to useful employment when reasonably possible. Richmond Mem. Hosp. v. Allen, 3 Va.App. 314, 318, 349 S.E.2d 419, 422 (1986).
An injured employee, who is entitled to compensation benefits from his employer, including medical benefits, may not elect to remain disabled at the expense of his or her employer when reasonable medical treatment would cure or correct the disability and enable the person to become a productive employee. See Davis v. Brown & Williamson Tobacco Co., 3 Va.App. 123, 348 S.E.2d 420 (1986) (holding that the “unjustified refusal” provision is “to penalize” employees who unjustifiably refuse reasonable and necessary medical attention). Here, the commission held on November 7, 1993, that Ellen Rose unjustifiably refused medical treatment by refusing to have disc surgery recommended by her attending physician which, according to his opinion, would correct her work-related disability. Accordingly, the commission suspended Ellen Rose’s benefits and that decision has been final and binding and remained in effect since November 7,1993.
On November 6, 1995, the day before Ellen Rose’s claim for further benefits would have been barred by Code § 65.2-708, she filed a change of condition application stating that she was now willing to have the corrective disc surgery. In support of her application she proved that her counsel had sent a letter to employer’s counsel stating that Ms. Rose was willing to undergo the lumbar surgery and requesting that they confer to arrange an appointment with her treating physician, Dr. Preuss. Rose contends, and the majority has held, that her stated willingness to have the surgery cured her unjustified refusal and that compensation benefits, which had been suspended for two years, should be reinstated. The commission found that Ellen Rose’s stated willingness to undergo the surgery was a “verbal cure” of her unjustified refusal and that the two appointments that she arranged with Dr. Preuss were affirmative acts that corroborated her good faith. The majority of this Court holds that credible evidence supports that finding.
*41 I disagree with that holding. The affirmative acts upon which both the commission and this Court rely to prove that Ellen Rose’s stated willingness to have surgery was bona fide were two appointments she had with Dr. Preuss. However, what is significant about the two appointments with Dr. Preuss is, as his deposition establishes, that Ellen Rose did not and does not intend to have the surgery which would correct her work-related disability but rather intends to live with the pain. In my opinion, the majority errs by merely considering the fact that Rose made appointments with Dr. Preuss as affirmative acts proving her good faith, without considering what transpired at the appointments. Because Dr. Preuss’s deposition proves unequivocally that Rose did not schedule surgery and does not intend to have surgery, but rather intends to live with the pain, no credible evidence proves that Rose had a bona fide willingness to have surgery. Because I would find that no credible evidence supports the commission’s finding that Rose cured her unjustified refusal of medical treatment, I respectfully dissent.
As the majority notes, whether Rose cured her unjustified refusal is a mixed question of law and fact. See Roanoke Belt, Inc. v. Mroczkowski, 20 Va.App. 60, 68, 455 S.E.2d 267, 271 (1995). The factual component of the question requires a determination by the commission of Rose’s state of mind and whether her stated willingness to have surgery was in good faith. But, we review de novo whether credible evidence exists in the record to support the commission’s finding.
Clearly, the standard of review by this Court is high. Unless the evidence in the record is insufficient, as a matter of law, to sustain her burden of proof that she cured her unjustified refusal of medical treatment by a good faith willingness to have the surgery, then the commission’s finding is binding and conclusive. Code § 65.2-706; Tomko v. Michael’s Plastering Co., 210 Va. 697, 699,173 S.E.2d 833, 835 (1970).
As previously noted, an injured employee cannot refuse to accept reasonable medical services that will enable the employee to return to productive employment. Code § 65.2-603. *42 In order to cure an unjustified refusal of medical treatment, an employee must accept the corrective medical treatment and may do so, as the majority holds, by a “verbal cure” provided the statement demonstrates a good faith willingness by the employee to accept the surgery. The majority holds, and I concur with that holding, that good faith can be shown “through an affirmative action or a showing of circumstances mitigating the failure to act.” For purposes of this opinion, I accept the commission’s finding and the majority’s upholding that Rose’s depression and agoraphobia constituted mitigating circumstances explaining her delay in contacting Dr. Preuss for further medical treatment. However, the record is clear, in my opinion, that in order to cure her unjustified refusal of medical treatment she must be willing to have disc surgery, and Rose did not and does not intend to have the corrective surgery. Dr. Preuss’s deposition establishes that although the surgery would improve her symptoms, Rose does not plan to have the surgery because her condition is “stable” and she can tolerate the pain. The fact that surgery may not be a medical necessity from the doctor’s point of view does not relieve Rose of the responsibility of accepting reasonable medical treatment that will alleviate these problems that cause the work-related disability. Although Rose may have other unrelated emotional or psychological disabilities that prevent her from returning to her previous employment, she cannot elect to have her work-related disability go untreated in order to receive compensation benefits from her employer.
While contacting Dr. Preuss and arranging the belated appointments with him in February and July could, under some circumstances, be “affirmative actions” that show good faith, where the result of those appointments is that surgery was not scheduled because Rose was willing to “live with the pain” the evidence fails to prove that she was willing to have surgery. The question for Rose is not whether surgery is a medical necessity, but whether surgery is a reasonable treatment that would correct her disability. It is not sufficient, as the majority apparently holds, that she is now willing to accept surgery as a course of treatment merely because she sched *43 uled the appointments; the result of those “affirmative acts” proved that Rose continued to elect to live with the pain rather than accept surgery.
I would reverse the commission’s finding and hold that no credible evidence proves that Rose’s “verbal cure” was in good faith; to the contrary, the evidence proves she had no intention to accept the medical treatment.